Ashraf A. JAMAL, Plaintiff,

v.

**TRAVELERS LLOYDS OF TEXAS IN-SURANCE COMPANY and Travelers Property & Casualty Insurance Company, Defendants.**

**No. CIV. A. H–99–4369.**

United States District Court,
S.D. Texas.

Jan. 26, 2001.

Allan G. Levine, Hirsch and Westheimer PC, Gregory S. Levine, Attorney at Law, Jeffrey Robert Matthews, Attorney at Law, Toby C. Easley, Attorney at Law, Houston, for Ashraf A. Jamal, plaintiffs.

Nicholas E. Zito, Markle Ramos et al., Houston, Laurence E. Boyd, Attorney at Law, Angleton, Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for Travelers Lloyds of Texas Insurance Company, Travelers Property and Casualty Insurance Company, defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Travelers Property & Casualty Insurance Company's ("TPCIC") Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 12(c)(# 28). TPCIC seeks dismissal of Plaintiff Ashraf A. Jamal's ("Jamal") extra-contractual, state law claims on the grounds that they are preempted by federal law. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that TPCIC's motion to dismiss should be granted in part and denied in part.

### I. *Background*

Defendants Travelers Lloyds of Texas Insurance Company ("Travelers Lloyds") and TPCIC are insurance carriers authorized to do business in Texas. Travelers Lloyds sells privately underwritten Texas homeowners' insurance, while TPCIC sells federally underwritten flood insurance, referred to as Standard Flood Insurance Policies ("SFIP"), part of the National Flood Insurance Plan ("NFIP") under the National Flood Insurance Act ("NFIA"). Both TPCIC and Travelers Lloyds sell insurance through independent agents. At least one such agent, Holt & Hochman Insurance Agency ("H & H"), sells both homeowners' policies for Travelers Lloyds's and SFIPs for TPCIC.

In August 1997, Jamal purchased two insurance policies through H & H, Travelers Lloyds' Texas Standard Homeowners Policy Form B # 216SQ 40057646 PTC and TPCIC's SFIP # 6–0031–5168–2, pertaining to his residence located at 7310 Lake Lane in Houston, Texas. The policies were renewed in August 1998. The homeowners' policy covers up to $101,000.00 for losses resulting from damage to the building and up to $66,000.00 for losses to its contents, with a $250.00 deductible. The SFIP covers up to

$78,000.00 for the building and up to $30,000.00 on its contents, with no deductible. According to Jamal, H & H was acting as an agent for TPCIC and Travelers Lloyds when it sold the policies. Jamal also maintains that H & H's representatives "explained that the two policies combined to provide full protection, basically, the flood policy protecting loss excluded from the homeowners policy and vice versa."

On September 10, 1998, Tropical Storm Frances struck Houston. According to Jamal, over the course of two days, his house was flooded and otherwise damaged by the storm. Jamal contends that the actual cash value of his home prior to the loss was $140,000.00 and the value of the contents was $137,000.00, while, after the storm, the actual cash value, presumably of both building and contents combined, was $25,000.00. He further asserts that the cost to repair and replace the damaged building was $140,000.00 and that the actual damage to the insured contents was $130,000.00. He notified both Travelers Lloyds and TPCIC of the damages, enumerating each loss and making a total claim of $270,000.00. At the time Jamal filed his original petition, he had received $71,203.72 on his claims. It is unclear which company or companies paid this sum.

On October 29, 1999, Jamal filed his original petition in the 113th Judicial District Court of Harris County, Texas, asserting that, under the insurance contracts, the two policies combined covered his entire loss of $270,000.00 and that, taking into account the $71,203.72 already paid, he is now due $198,796.28. He alleges claims for breach of contract, breach of the duty of good faith and fair dealing, and breach of the Texas Insurance Code. For these violations, Jamal seeks actual damages, exemplary damages, statutory penalties, attorneys' fees, pre- and post-judgment interest, and court costs.

On August 25, 2000, TPCIC filed its motion to dismiss, contending that Jamal's extra-contractual claims are preempted or otherwise not cognizable under federal law, the governing law with respect to SFIPs.

## II. *Analysis*

### A. *Dismissal Under Rule 12(b)(6)*

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief. It is not a procedure for resolving contests about the facts or the merits of a case. In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Beanal v. Freeport–McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir.1999); *Brown v. Nationsbank Corp.,* 188 F.3d 579, 585 (5th Cir.1999), *cert. denied,* 530 U.S. 1274, 120 S.Ct. 2740, 147 L.Ed.2d 1004 (2000); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir.1999); *Jefferson v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245, 1250 (5th Cir.1997); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). The court may not look beyond the four corners of the plaintiff's pleadings. *See Indest,* 164 F.3d at 261; *Baker,* 75 F.3d at 196; *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). The court may, however, consider matters that are outside of the pleadings if those materials are matters of public record. *See Davis v. Bayless,* 70 F.3d 367, 372 n. 3 (5th Cir. 1995); *Cinel v. Connick,* 15 F.3d 1338, 1343 n. 6 (5th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice And Procedure: Civil 2d § 1357, at 299 (1990). The Fifth Circuit has also suggested that the court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *See Collins v.*

*Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

" 'A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." ' " *Id.* (quoting *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983))). The motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Brown,* 188 F.3d at 585; *Jefferson,* 106 F.3d at 1250; *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995); *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.,* 39 F.3d 556, 559 (5th Cir.1994); *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir.1994). " 'The question therefore is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.' " *Shipp v. McMahon,* 234 F.3d 907, 911 (5th Cir.2000) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 332–36 (2d ed.1990)).

" 'In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations.' " *Collins,* 224 F.3d at 498 (quoting *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994)). " '[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " *Jefferson,* 106 F.3d at 1250 (quoting *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993)); *accord Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995); *see Tuchman,* 14 F.3d at 1067. " '[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' " *Campbell,* 43 F.3d at 975 (quoting 3 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216, at 156–59 (1990) (footnote omitted)). " '[A] statement of facts that merely creates a suspicion that the pleader might have a right of action' is insufficient." *Id.* (quoting 3 CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra.,* at 163 (footnote omitted)). " 'Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief ....' " *Id.* (quoting 2A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.–5], at 12–91 (1995) (footnote omitted)). "The court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." *Id.* (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)).

B. *The National Flood Insurance Program*

"The National Flood Insurance Act of 1968 established a national flood insurance program that enables property owners to purchase insurance against flood risks at reasonable rates." *Hanover Bldg. Materials, Inc. v. Guiffrida,* 748 F.2d 1011, 1012 (5th Cir.1984); *see* 42 U.S.C. §§ 4001(a), (c), 4002(b); *Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 387 (9th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000); *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 165 (3d Cir.1998); *Gowland v. Aetna,* 143 F.3d 951, 953 (5th Cir.1998); *Till v. Unifirst Fed. Sav. & Loan Ass'n,* 653 F.2d 152, 156 (5th Cir.1981); *West v. Harris,* 573 F.2d 873, 880 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). In addition to risk-sharing measures, the NFIA provides for flood mitigation designed to reduce the risk of flood loss in flood-prone areas and requires participating communities to institute flood

plain management ordinances to reduce the risk of loss due to flooding. *See* 42 U.S.C. §§ 4001(c), 4002(b), 4022(b), 4102; *Till,* 653 F.2d at 156–57. The program is currently operated by the Federal Emergency Management Agency ("FEMA"), which is authorized by statute to control the payment or disallowance of all flood insurance claims. *See Flick,* 205 F.3d at 389; *Van Holt,* 163 F.3d at 165; *Gowland,* 143 F.3d at 953; *Berger v. Pierce,* 933 F.2d 393, 395 (6th Cir.1991); *Sandia Oil Co. v. Beckton,* 889 F.2d 258, 259 (10th Cir.1989); *Gibson v. American Bankers Ins. Co.,* 91 F.Supp.2d 1037, 1041 (E.D.Ky.2000).

"The Act authorizes the Director of [FEMA] to 'provide by regulation for general terms and conditions of insurability which shall be applicable to property owners eligible for flood insurance coverage under [the Act].'" *Hanover Bldg. Materials, Inc.,* 748 F.2d at 1012 (quoting 42 U.S.C. § 4013(a)). FEMA regulations promulgated under the NFIA establish the terms of the SFIP and provide for marketing and claims adjustment by private insurers operating as "Write–Your–Own" ("WYO") companies, which issue SFIPs in their own names. *See Flick,* 205 F.3d at 389; *Gowland,* 143 F.3d at 953; *Spence v. Omaha Indem. Ins. Co.,* 996 F.2d 793, 795 (5th Cir.1993); *Gibson,* 91 F.Supp.2d at 1041; *Masoner v. First Community Ins. Co.,* 81 F.Supp.2d 1052, 1055 (D.Idaho 2000); *3608 Sounds Ave. Condo. Ass'n v. South Carolina Ins. Co.,* 58 F.Supp.2d 499, 502 (D.N.J.1999); *Parsons Footwear, Inc. v. Omaha Property & Cas. Co.,* 19 F.Supp.2d 588, 589 (N.D.W.Va.1998); *see also* 44 C.F.R. §§ 61.13(f), 62.23(a). The WYO program was created by FEMA in accordance with its authorization by the NFIA to "undertake any necessary arrangements to carry out the program of flood insurance" and to utilize private insurance companies to assist in marketing flood insurance coverage. 42 U.S.C. § 4071(a); *see* 44 C.F.R. §§ 61.13(f), 62.23; *Flick,* 205 F.3d at 389; *Van Holt,* 163 F.3d at 165; *Masoner,* 81 F.Supp.2d at 1055; *Parsons Footwear, Inc.,* 19 F.Supp.2d at 589. SFIPs may also be purchased direct-ly from the federal government. *See* 44 C.F.R. § 62.3(c).

### C. *Preemption*

■ It is well recognized that "[f]ederal law governs disputes over coverage arising under the National Flood Insurance Act of 1968." *Hanover Bldg. Materials, Inc.,* 748 F.2d at 1013; *see Flick,* 205 F.3d at 390; *McHugh v. United Servs. Auto. Ass'n,* 164 F.3d 451, 454 (9th Cir.1999); *Leland v. Federal Ins. Adm'r,* 934 F.2d 524, 529 (4th Cir.), *cert. denied,* 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991); *Sodowski v. National Flood Ins. Program,* 834 F.2d 653, 655 (7th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988); *West,* 573 F.2d at 881–82. "When such disputes arise, they are resolved under federal law 'by drawing upon standard insurance law principles.'" *Hanover Bldg. Materials, Inc.,* 748 F.2d at 1013 (quoting *West,* 573 F.2d at 881); *accord Flick,* 205 F.3d at 390. In this instance, "[t]he meaning and effect of the insurance contract depends on the meaning and effect of the regulations, and the statute authorizing and directing the regulations and defining the coverage." *Berger,* 933 F.2d at 397. "Federal law has long recognized that an insured must comply strictly with the terms and conditions of a federal insurance policy." *Flick,* 205 F.3d at 390 (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). As a consequence, "case-law clearly indicates that federal common and statutory law preempts state principles of contract law for purposes of the interpretation of policies issued pursuant to the National Flood Insurance Act of 1968." *Friedman v. South Carolina Ins. Co.,* 855 F.Supp. 348, 350 (M.D.Fla.1994).

Although the NFIA does not expressly preempt state law, courts addressing the issue have generally held that, as a practical matter, most state law claims are preempted. *See West,* 573 F.2d at 880–81; *Scherz v. South Carolina Ins. Co.,* 112 F.Supp.2d 1000, 1007 (C.D.Cal.2000); *Ma-*

*son v. Witt,* 74 F.Supp.2d 955, 963 (E.D.Cal.1999); *3608 Sounds Ave. Condo. Ass'n,* 58 F.Supp.2d at 502–03. The Fifth Circuit considered federal preemption issues associated with SFIPs in both *West* and *Spence. See Spence,* 996 F.2d at 795–97; *West,* 573 F.2d at 880–81. In *West,* the court denied the recovery of attorneys' fees permitted under state statutes, holding that "federal law controls disputes over the coverage of insurance policies issued pursuant to the [NFIA]." *Id.* at 882. The court observed:

> Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.

*Id.* at 881. The court further noted that "Congress has undertaken to regulate the claims adjustment process and judicial review thereof, and nowhere in these statutory sections or in the regulations implementing them is there any mention of use of the statutory law of the forum state on any issue." *Id.* at 880 (citations omitted).

In *Spence,* the court, while confirming that "federal common law governs claims under flood insurance policies," found that "the same does not apply in actions for tortious misrepresentations against WYO insurers." 996 F.2d at 796. In that case, the plaintiffs complained that they had relied on misrepresentations by the insurer's agent concerning the scope of coverage of the policy when initially purchasing the flood insurance policy. *See id.* at 794. The court rejected the insurer's argument that the provisions of 44 C.F.R. § 61.5(i) absolved it from any liability for misrepresentations made by the agent. *See id.* at 797. The *Spence* decision distinguishes between claims seeking recovery under the SFIP, which are preempted, and those arising from alleged misrepresentations made during the procurement of the policy, which are not. *See id.* at 796; *Miller v. Omaha Prop. & Cas. Ins. Co.,* No. H–

95–4942, slip op. at 8 (S.D.Tex. Sept. 4, 1997). As Magistrate Judge Nancy K. Johnson remarked in *Miller,* an opinion that was subsequently adopted by United States District Judge Sim Lake of this court:

> the court does not view *Spence* as authorizing all state law causes of action related to disputes over federally-funded flood insurance, only those causes related to misrepresentations in the *procurement* of such flood insurance. Claims involving the *interpretation* of policies issued under the NFIP must be governed by federal law.

*Id.* In *Miller,* however, the court dismissed the plaintiffs' claims for fraud and misrepresentation under the Texas Deceptive Trade Practices Act as well as for breach of the duty of good faith and fair dealing, finding that all the claims arose from interpretation of the SFIP and the ultimate denial of coverage, rather than from statements related to the procurement of the policy. *See id.* at 8–10.

Fifth Circuit case law makes it abundantly clear that SFIP contract and coverage disputes are governed exclusively by federal law. *See Spence,* 996 F.2d at 796; *United States v. Parish of St. Bernard,* 756 F.2d 1116, 1121 (5th Cir.1985), *cert. denied,* 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986); *Hanover Bldg. Materials, Inc.,* 748 F.2d at 1013; *Mason Drug Co., Inc. v. Harris,* 597 F.2d 886, 887 (5th Cir.1979); *West,* 573 F.2d at 880–82. Actions complaining of misrepresentations made to induce the purchase of insurance, however, do not constitute "coverage" disputes. Thus, state law tort claims for fraud and misrepresentation are not preempted in such cases. *See Spence,* 996 F.2d at 796; *Miller,* No. H–95–4942, slip op. at 8–10. As one court has explained:

> Policy procurement is an entirely different creature than claims handling. NFIA regulations provide that FEMA will reimburse WYO insurers for the claims and the claims handling, as well as for the costs of defending a lawsuit

based on claims handling, and there is thus no incentive for the WYO insurer to deny a claim in part or in full—the more claims the WYO insurer agrees to pay, the more money it will receive from the U.S. Treasury. On the other hand, the WYO insurers may have the incentive to make fraudulent misrepresentations when trying to get potential customers to sign up for flood insurance in the first place. *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F.Supp.2d 513, 521 (D.N.J.2000). Other courts have reached similar conclusions. *See Scherz*, 112 F.Supp.2d at 1008–10; *Neill v. State Farm Fire & Cas. Co.*, No. CIV.A. 00–CV–2108, 2000 WL 1886573, at *5, 8 (E.D.Pa.Dec.1, 2000) (recognizing that "[t]he decisions in *Spence* and *West* present a dichotomy between policy procurement and claims handling that appears in other cases"); *Stapleton v. State Farm Fire & Cas. Co.*, 11 F.Supp.2d 1344, 1346–47 (M.D.Fla.1998); *Miller*, No. H–95–4942, slip op. at 7–10.

In the case at bar, Jamal has enumerated three causes of action: breach of contract, breach of the duty of good faith and fair dealing, and violation of the Texas Insurance Code. In its motion, TPCIC does not request dismissal of Jamal's claims alleging breach of the insurance contract. TPCIC, however, seeks dismissal of his remaining claims. Generally, claims for breach of the duty of good faith and fair dealing are regarded as claims-handling or "coverage" claims that are preempted by federal law. *See Scherz*, 112 F.Supp.2d at 1009; *Messa*, 122 F.Supp.2d at 521–22; *Miller*, No. H–95–4942, slip op. at 8. In this instance, the specific allegations supporting Jamal's breach of duty claim all relate to coverage issues. The complaint reads:

B. *Breach of Duty of Good Faith and Fair Dealing*

13. As a result of the relationship between the parties created by the nature of insurance policies and the parties' unequal bargaining power, defendants owed and owes [sic] to Plaintiff a duty to deal fairly and in good faith. There was and is no basis for the denial of Plaintiff's claims for full benefits payable under the policy. Defendants [sic] actions were unfair because Plaintiff's losses were the type of losses Defendants promised to pay. Defendants thus breached their duty to deal fairly and in good faith with Plaintiff.

Likewise, Jamal's claims under the Texas Insurance Code exclusively concern coverage and claims-handling issues. That portion of the complaint reads:

C. *Breach of Insurance Code (Art. 21.21 and 21.55.33)*

14. The defendants delayed payment of plaintiff's claim for more than 60 days after they received all required and requested items, statements [sic], but for the $71,203.72 paid September 11, 1998.

15. Defendants have engaged in the following practices in violations [sic] of the Texas Insurance Code:

a. Defendants have failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim after liability under the policies become [sic] reasonably clear;

b. Defendants have refused to pay a claim without conducting a reasonable investigation with respect to the claim. This conduct constitutes unfair settlement practices as defined in Article 21.21 4(10) of the Texas Insurance Code, which are actionable pursuant to § 16(a) of the Texas Insurance Code.

Moreover, such a claim is illogical in light of the underlying regulatory scheme, as insurance companies participating in the WYO program receive 3.3% of the amount paid out on claims on the SFIPs they sell. *See* 44 C.F.R. Pt. 62, App. A Art. III(C)(1); *Scherz*, 112 F.Supp.2d at 1004. "Therefore, not only does a WYO insurer have an incentive to approve a claim, but the greater the payment, the larger the amount the insurer recovers." *Id.; see Messa*, 122 F.Supp.2d at 522; *3608 Sounds Ave. Condo. Ass'n*, 58 F.Supp.2d at 502. Thus,

because both Jamal's breach of the duty of good faith and fair dealing claim and his claim under the Texas Insurance Code relate exclusively to TPCIC's denial of coverage and failure to pay for losses under the SFIP, they are preempted by federal law and should be dismissed.

Although a claim for fraud and misrepresentation arising from the procurement of the SFIP would not be preempted, Jamal asserts no such cause of action in this case. *See Spence*, 996 F.2d at 796; *Miller*, No. H–95–4942, slip op. at 8–10. While Jamal alludes in the Background Facts section of his petition to an alleged statement made by an H & H representative at the time he procured the policies to the effect that the homeowners' policy and the SFIP combined to provide "full protection," the claims set forth in his petition are limited to breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code. To plead fraud, Rule 9(a) of the Federal Rules of Civil Procedure requires a plaintiff at a minimum to allege the " ' "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." ' " *United States v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir.1999) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997) (quoting *Tuchman*, 14 F.3d at 1068)); *see Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir.2000). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177–78 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). "Facts and circumstances constituting the charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir.1968); *In re Commonwealth Oil/Tesoro Petroleum*

*Corp. Sec. Litig.*, 467 F.Supp. 227, 250 (W.D.Tex.1979). Here, Jamal has not made the specific allegations required for a claim of fraud.

Jamal also seeks attorneys' fees in connection with each of his claims. It is well-established that prevailing plaintiffs cannot recover attorneys' fees under state law for breach of contract claims relating to a SFIP. *See West*, 573 F.2d at 881; *accord Fenton v. Federal Ins. Admin.*, 633 F.2d 1119, 1122 (5th Cir.1981); *3608 Sounds Ave. Condo. Ass'n*, 58 F.Supp.2d at 502; *Friedman*, 855 F.Supp. at 350; *Drewett v. Aetna Cas. & Sur. Co.*, 405 F.Supp. 877, 878–79 (W.D.La.1975). Despite his vehement denial in response to TPCIC's motion to remand that he intended to bring any claims under federal law, Jamal now contends that he seeks attorneys' fees not under Texas law, but "based on equitable considerations pursuant to federal common law governing all of Plaintiff's claims." In *Fenton*, the Fifth Circuit, rejecting a claim for attorneys' fees under the Federal Crime Insurance Act, likened that act to the NFIA, as discussed in its prior decision in *West*:

> The flood insurance program resembles the [Crime Insurance Act] in that both are national in scope and subject to extensive federal regulation. Moreover, neither program competes with the private insurance industry, but instead provides coverage at affordable rates that would otherwise be unavailable. A prohibition against award of attorney's fees, therefore, serves to reduce the cost to the federal government of operating these insurance programs.

633 F.2d at 1122 (citing *West*, 573 F.2d at 881–82). Other courts have confirmed that there is no basis for the recovery of attorneys' fees under federal common law in actions involving a dispute over coverage of a SFIP. *See Hanover Bldg. Materials, Inc.*, 748 F.2d at 1015; *Messa*, 122 F.Supp.2d at 523; *Bianchi v. State Farm Fire & Cas. Co.*, 120 F.Supp.2d 837, 842 (N.D.Cal.2000); *Durkin v. State Farm*

*Mut. Ins. Co.*, 3 F.Supp.2d 724, 729 (E.D.La.1997), *aff'd*, 141 F.3d 1163 (5th Cir.1998); *Adams v. State Farm Fire & Cas. Co.*, Civ. A. No. 96–1571, 1996 WL 592734, at *2 (E.D.La. Oct.10, 1996). Accordingly, Jamal may not recover attorneys' fees in connection with any recovery relating to his claims under the SFIP.

■ Numerous courts have also held that a prevailing plaintiff in a lawsuit under the NFIA cannot recover exemplary or statutory penalties. *See West*, 573 F.2d at 881; *Messa*, 122 F.Supp.2d at 523; *3608 Sounds Ave. Condo. Ass'n*, 58 F.Supp.2d at 502; *Stapleton*, 11 F.Supp.2d at 1347; *Durkin*, 3 F.Supp.2d at 729; *Miller*, No. H–95–4942, slip op. at 10–11; *Eddins v. Omega Ins. Co.*, 825 F.Supp. 752, 754 (N.D.Miss.1993); *Drewett*, 405 F.Supp. at 878–79. As one federal court explained:

> The threat of punitive damages deters insurance companies, who would be otherwise unjustly enriched, from arbitrarily denying claims that rightfully should be paid. A private insurer does not have a pecuniary incentive to deny a claim under a policy issued through the National Flood Insurance Act. Any claim would be paid by the Federal Government. [Therefore, a]llowing punitive damages to be recoverable under the [NFIA] would simply defeat the philosophy behind the program.

*Eddins*, 825 F.Supp. at 754; *accord 3608 Sounds Ave. Condo. Ass'n*, 58 F.Supp.2d at 502. In *West*, the Fifth Circuit noted that "[t]he damages recoverable [under the NFIA] are pecuniary in nature, not personal." *West*, 573 F.2d at 883; *accord Stapleton*, 11 F.Supp.2d at 1347; *Miller*, No. H–95–4942, slip op. at 7; *Eddins*, 825 F.Supp. at 754. The court in *Durkin* elaborated:

> Permitting personal recovery in the form of attorneys' fees, penalties, or punitive damages, would defeat the purpose of the NFIA. The objective of the Act is to provide affordable insurance to high-risk property owners. Although private insurance companies administer the insurance contracts, the federal government acts as the guarantor for all claims. Thus, any damages that are payable to the claimant are paid out of the government's pocket. In order to keep the cost of insurance to a reasonable level, it is in furtherance of the federal scheme of NFIA to prohibit any damages beyond those pecuniary in nature.

3 F.Supp.2d at 729. "Thus, a prevailing plaintiff in a suit on a flood insurance policy issued pursuant to the National Flood Insurance Act is not entitled to recover the statutory penalty ... fees allowed by state insurance law for arbitrary denial of coverage." *West*, 573 F.2d at 881. Hence, Jamal cannot recover exemplary or statutory penalties under state law for his claims against TPCIC relating to the denial of coverage under the SFIP.

■ The Fifth Circuit has determined, however, that a prevailing plaintiff may recover prejudgment interest in a case under the NFIA. *See id.* at 883–84. The court noted that in analogous situations in which the amount of liability is "based upon the readily ascertainable value of damages to property rather than personal injury ... it has been held that the better practice is to allow prejudgment interest as an element of compensation in the absence of strong equities to the contrary." *Id.* at 883 (citing *Eazor Express, Inc. v. International Bhd. of Teamsters*, 520 F.2d 951, 973 (3d Cir.1975), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976); *Aetna Cas. & Sur. Co. v. United States*, 365 F.2d 997, 1006–07 (8th Cir. 1966)). Under the NFIA, "the amount [of damages] is based upon the readily ascertainable value of services and property." *Id.* Accordingly, the court found that "[f]air compensation to the plaintiff for his loss covered by the insurance policy issued by the defendant can only be achieved by including the award of prejudgment interest as a mandatory element of damages." *Id.* at 883. Therefore, Jamal is entitled to an award of prejudgment interest if he is successful on his remaining claim under federal law.

### III. *Conclusion*

Jamal's claims against TPCIC for breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, attorneys' fees, exemplary damages, and statutory penalties are preempted or otherwise unavailable under federal law. Accordingly, TPCIC's motion to dismiss is GRANTED as to those claims.

Jamal's claim against TPCIC for prejudgment interest remains viable under federal law. Thus, TPCIC's motion is DENIED as to Jamal's claim for prejudgment interest.